FILED
CLERK, U.S. DISTRICT COURT
9/30/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: KMA DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBERTO GOMEZ,
aka "Rob Flores,"
aka "Robert,"
aka "Rob,"
aka "Fat Boy,"
aka "Fats,"
aka "Rooster,"
aka "Gallo,"
aka "🐓,"
aka "🐔,"

Defendant.

CR 2:26-cr-00621-SRM

I N D I C T M E N T

[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 963: Conspiracy to Import Controlled Substances; 18 U.S.C. § 3: Accessory After the Fact; 21 U.S.C. §§ 1904(b)(4), (c)(2), 1906(a): Attempt to Transact and Deal with a Specially Designated Narcotics Trafficker; 21 U.S.C. § 853: Criminal Forfeiture]

The Grand Jury Charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A. The Defendant

1. Defendant ROBERTO GOMEZ, also known as "Rob Flores," "Robert," "Rob," "Fat Boy," "Fats," "Rooster," "Gallo," "🐓," and

“🐓,” was charged by the Los Angeles County District Attorney’s Office in The People of the State of California v. Roberto Gomez, Case Number BA202107, with two counts of Second Degree Robbery, in violation of California Penal Code Section 211, and fled from Los Angeles County to Mexico sometime thereafter to avoid prosecution.

2. While residing in Mexico, defendant met and communicated with leaders of the Sinaloa Cartel and *Cártel de Jalisco Nueva Generación* (“Jalisco New Generation Cartel” or “CJNG”).

3. While residing in Mexico, defendant cultivated relationships with individuals who had access to law-enforcement sensitive information from Mexican and American agencies.

4. While residing in Mexico, defendant operated as an intermediate supplier of controlled substances to multiple transnational criminal organizations (“TCOs”). Defendant’s primary method of operation involved transporting controlled substances, including, but not limited to, cocaine, methamphetamine, and fentanyl, into Mexico via aircraft and maritime vessels through Central America, followed by land-based transportation into the United States and into Canada. Defendant’s primary and preferred method of transmitting and receiving payment was stable coin cryptocurrency, including USDT or USD Tether, a digital currency that was pegged one-to-one with a real-world fiat currency (the U.S. dollar).

5. On or about January 31, 2018, a federal grand jury in the Central District of California returned an indictment in United States v. Jose Guillermo Grosso Gamez, et al., 2:18-cr-00049-ODW, charging defendant with conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable

amount of methamphetamine, in violation of Title 21, United States Code, Section 846 (Count One); conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Six); international promotional money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A) (Count Seven); and international concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) (Count Eight).

B. <u>Defendant's Association with the Wedding Criminal Enterprise</u>

6. Former Olympian Ryan James Wedding ("Wedding"), a Canadian citizen and national residing in Mexico, was the leader of a billion-dollar TCO (hereafter, referred to as the "Wedding Criminal Enterprise") that was the largest supplier of cocaine to Canada and operated in other countries, including, but not limited to, Colombia, Mexico, and the United States.

(1) *Trafficking of Controlled Substances*

7. The Wedding Criminal Enterprise, working in conjunction with members and associates of prominent Mexican drug cartels, like defendant, utilized boats and planes to move hundreds of kilograms of cocaine from Colombia to Mexico at a time. The Wedding Criminal Enterprise then used semi-trucks to smuggle the cocaine across the United States-Mexico and United States-Canada borders.

(2) *Public Corruption*

8. Defendant provided members and associates of the Wedding Criminal Enterprise with law-enforcement sensitive information, including alerting them about drug seizures, planned arrest operations, outstanding warrants, and the filing of criminal charges, to assist in hindering and preventing their apprehension, trial, and punishment.

C. The *Wedding* Indictment

9. On or about September 17, 2024, a federal grand jury in the Central District of California returned a first superseding indictment in United States v. Ryan James Wedding, et al., 2:24-cr-00369(A)-SPG ("Wedding"), charging Wedding with conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846 (Count One); conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine and a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, Unites States Code, Section 846 (Count Two); and conspiracy to export a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 963 (Count Three), among other offenses against the United States.

10. On or about October 17, 2024, the United States Attorney's Office for the Central District of California publicly announced the charges in Wedding against Wedding and others.

D. Wedding's Identification and Designation as a Specially Designated Narcotics Trafficker ("SDNT")

11. On or about November 19, 2025, pursuant to the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act"), Title 21, United States Code, Sections 1901 through 1908, and Title 31, Code of Federal Regulations, Parts 501, 536, and 598, the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), identified and designated Wedding as an SDNT and sanctioned Wedding, alongside nine individuals and nine entities closely

associated with him. A chart illustrating the individuals and entities sanctioned is depicted below.




12. The Kingpin Act declared a national emergency with respect to the activities of international narcotics traffickers and their organizations, which threatened the national security, foreign policy, and economy of the United States.

13. As a result of OFAC's actions, all property and interests in property of the persons described above, including Wedding, that were in the United States or in the possession or control of a United States person were blocked and were required to be reported to OFAC. In addition, any entities that were owned, directly or indirectly, individually or in the aggregate, 50 percent or more by one or more blocked persons were also blocked. Unless authorized by a general or specific license issued by OFAC, or exempt, OFAC's regulations generally prohibited all transactions by United States persons or

within (or transiting) the United States that involve any property or interests in property of designated or otherwise blocked persons.

COUNT ONE

[21 U.S.C. § 846]

14. The Grand Jury realleges paragraphs 1 through 10 here.

A. OBJECT OF THE CONSPIRACY

15. Beginning no later than in or around 2016, and continuing through in or around 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, Wedding, and others known and unknown to the Grand Jury, conspired to knowingly and intentionally distribute and possess with intent to distribute the following controlled substances:

a. At least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

b. At least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B. MANNER AND MEANS OF THE CONSPIRACY

16. The objects of the conspiracy were to be accomplished, in substance, as follows:

Cocaine and Methamphetamine Trafficking

17. Defendant and other members of the conspiracy would coordinate the transportation of cocaine and methamphetamine to Mexico via aircraft and maritime vessels.

18. Defendant and other members of the conspiracy would coordinate the transportation of cocaine and methamphetamine from

Mexico to the Central District of California via long-haul semi-trucks.

19. Defendant and other members of the conspiracy would arrange for the storage of bulk quantities of cocaine and methamphetamine in the Central District of California.

20. Members of the conspiracy would send drug transportation network drivers to the Central District of California to transport the cocaine from the Central District of California to Canada and elsewhere in the United States via long-haul semi-trucks.

21. Members of the conspiracy would transport the cocaine and methamphetamine from the Central District of California to Canada and elsewhere in the United States in long-haul semi-trucks for eventual distribution there.

Public Corruption

22. Defendant would obtain law-enforcement sensitive information related to enforcement operations, including arrests, drug seizures, and warrant executions, and the filing of criminal charges from other members of the conspiracy and would provide this information to members of the conspiracy, including Wedding.

COUNT TWO

[21 U.S.C. § 963]

23. The Grand Jury realleges paragraphs 1 through 10 here.

A. OBJECT OF THE CONSPIRACY

24. Beginning no later than in or around 2016, and continuing through in or around 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, Wedding, and others known and unknown to the Grand Jury, conspired to import the following controlled substances into the United States:

a. At least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(B)(ii)); and

b. At least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(H).

B. MANNER AND MEANS OF THE CONSPIRACY

25. The objects of the conspiracy were to be accomplished, in substance, through the manner and means set forth in Paragraphs 17 through 22 of this Indictment.

COUNT THREE

[18 U.S.C. § 3]

26. The Grand Jury realleges paragraphs 1, 2 through 4, and 6 through 10 here.

27. Beginning no later than on or about October 8, 2024, and continuing through on or about January 22, 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, and others known and unknown to the Grand Jury, knowing that an offense against the United States had been committed, namely, conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846, received, relieved, comforted and assisted the offender, Wedding, in order to hinder and prevent his apprehension, trial and punishment.

COUNT FOUR

[18 U.S.C. § 3]

28. The Grand Jury realleges paragraphs 1, 2 through 4, and 6 through 10 here.

29. Beginning no later than on or about October 8, 2024, and continuing through on or about January 22, 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, and others known and unknown to the Grand Jury, knowing that an offense against the United States had been committed, namely, conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine and a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846, received, relieved, comforted and assisted the offender, Wedding, in order to hinder and prevent his apprehension, trial and punishment.

COUNT FIVE

[18 U.S.C. § 3]

30. The Grand Jury realleges paragraphs 1, 2 through 4, and 6 through 10 here.

31. Beginning no later than on or about October 8, 2024, and continuing through on or about January 22, 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, and others known and unknown to the Grand Jury, knowing that an offense against the United States had been committed, namely, conspiracy to export a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 963, received, relieved, comforted and assisted the offender, Wedding, in order to hinder and prevent his apprehension, trial and punishment.

COUNT SIX

[21 U.S.C. §§ 1904(b)(4), (c)(2), 1906(a); 18 U.S.C. § 2(a)]

32. The Grand Jury realleges paragraphs 1, 4, 6 to 7, and 11 through 13 here.

33. Beginning on or about November 19, 2025, and continuing through in or around 2026, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant, a United States person residing in Mexico, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and willfully attempted to engage in transactions and dealings to evade and avoid, and have the effect of evading and avoiding, the prohibition on transactions and dealings in property and interests in property of Wedding.

34. Specifically, defendant attempted to broker the sale of approximately 1,000 pounds of a mixture and substance containing a detectable amount of methamphetamine between a source of supply and Wedding, an SDNT, for approximately $550,000 USDT, without an exemption and without having obtained a general or specific license from OFAC.

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

35. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of the defendant's conviction of the offenses set forth in either of Counts One or Two of this Indictment.

36. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense;

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

37. Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond

///

the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, Transnational Organized Crime Section

LYNDSI ALLSOP
Assistant United States Attorney
Deputy Chief, Transnational Organized Crime Section

JOSHUA J. LEE
Assistant United States Attorney
Transnational Organized Crime Section